## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANNE FOGARTY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 18-cv-11090 |
| v. | ) ) ) | |
| WHOLE FOODS MARKET GROUP, INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                     **March 25, 2020**

### I.      Introduction

Plaintiff Anne Fogarty ("Fogarty") has filed this lawsuit against Defendant Whole Foods

Market Group, Inc. ("Whole Foods").  Fogarty alleges a single count of negligence for Whole

Foods' alleged failure to properly maintain the concrete steps on its premises.  Whole Foods has

moved for summary judgment, D. 24, as well as to strike the affidavit of Plaintiff's expert Darry

Robert Holt, D. 38, and to strike evidence of subsequent remedial measures by Whole Foods, D.

40.  For the reasons stated below, the Court ALLOWS Defendant's motion to strike Holt's

affidavit, ALLOWS Defendant's motion to strike evidence of subsequent remedial measures and

ALLOWS Defendant's motion for summary judgment.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are drawn from the parties' combined statement of facts and are undisputed unless otherwise noted. The case concerns an incident at a Whole Foods in which Fogarty fell down a set of stairs, suffering serious injuries in the process.

### A.    The Incident

The incident occurred on February 28, 2017 at the Whole Foods store on 340 River Street in Cambridge, Massachusetts (the "Store"). D. 43 at ¶ 1. A flight of stairs (the "Staircase") runs between the ground floor and the entrance of the Store's retail area. Id. at ¶ 3. A "nosing" or "tread" is installed on the front of each stair on the Staircase. Id. at ¶ 6. Prior to the incident, Fogarty had visited the store every week or every other week for several years and had never

2

noticed defective conditions on the Staircase during those visits. Id. at ¶¶ 9, 10. On the day of the incident, Fogarty arrived at the Store around 9:30 p.m. and proceeded up the Staircase to the retail area. Id. at ¶¶ 12, 13. She did not observe any stair in disrepair at that time. Id. at ¶ 25. Approximately ten minutes after entering the Store, Fogarty proceeded back to the Staircase to exit. Id. at ¶ 16. At the time of the incident, Fogarty was not holding onto either of the Staircase's handrails. Id. at ¶ 18. Fogarty does not remember walking down any stairs. Id. at ¶ 17. She contends, rather, that the heel of her right boot caught on a stair tread, which was loose or raised above the level of the stair, just as she was about to descend the Staircase. Id. at ¶¶ 19, 21. Fogarty acknowledges that she did not see her foot catch on a tread but she felt it. Id. at ¶¶ 22, 23. She also acknowledges that she is not certain on which stair she tripped. Id. at ¶¶ 50-52. Fogarty fell down the length of the Staircase. Id. at ¶¶ 22, 24. Fogarty was taken to the hospital in an ambulance after Renato Araujo ("Araujo"), the shift leader on duty at the Store at the time, and others came to Fogarty's aid. Id. at ¶¶ 32, 34.

### B. Examinations of Staircase Post-Incident

Immediately after Fogarty departed in the ambulance, Araujo examined the staircase to see what may have caused Fogarty's fall. Id. at ¶¶ 35-39. Fogarty disputes the thoroughness of Araujo's examination, but it is undisputed that he did not identify anything which he thought might have caused the fall. Id. Araujo did not observe any loose treads at the top of the Staircase at any time after Fogarty's fall. Id. at ¶ 80. Approximately one hour after the incident, Sender Lopez ("Lopez"), another employee at the Store, descended the Staircase and looked for possible causes of Fogarty's fall. Id. at ¶¶ 40, 46-49. Fogarty also questions the thoroughness of Lopez's examination, but he also did not identify anything which he thought might have caused the fall.

Id. at ¶¶ 46-49. No other witnesses observed an allegedly loose or raised tread on the Staircase at the time of the incident or immediately thereafter. Id. at ¶ 31.

Sometime within a week after the incident, Fogarty and her friend, Dr. Greg Koski, returned to the Store, id. at ¶ 53, at which point they observed the tread on the topmost stair of the Staircase, id. at ¶ 54. Both Fogarty and Koski testified that the thread on the topmost stair was loose and elevated at this time. Id. at ¶¶ 56, 59.

Darry Robert Holt, a licensed engineer engaged by Fogarty, examined the Staircase including the tread on the topmost stair on May 23, 2019, more than two years after the February 28, 2017 incident. Id. at ¶ 84. Holt observed corrosion and concrete deterioration around the topmost stair which created a height differential between the tread and the stair landing surface. Id. at ¶¶ 91-93. He concluded that the height differential he observed at the time of his May 2019 examination was consistent with the physical evidence and Fogarty's description of her fall two years prior. Id. at ¶ 95. Holt concluded that this condition was the cause of Fogarty's trip and fall. Id. at ¶ 103.

## IV.    Procedural History

Fogarty filed this lawsuit on April 12, 2018 in Middlesex Superior Court against Whole Foods alleging negligence for failure to repair or warn of a defective staircase. D. 1 at 5-7. Whole Foods removed the action to this Court on May 23, 2018. D. 1. Fogarty filed an amended complaint on June 21, 2018. D. 11. Whole Foods now has moved for summary judgment. D. 24. Whole Foods has also moved to strike the affidavit of Fogarty's expert witness, Holt, D. 38, and Fogarty's evidence of subsequent remedial measures taken by Whole Foods, D. 40. The Court held a hearing on the pending motions and took the matters under advisement. D. 53.

## V. Discussion

### A. <u>Motions to Strike</u>

#### 1. *Motion to Strike Affidavit of Darry Robert Holt*

Under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993), trial judges must act as gatekeeper to "insur[e] that the fact-finding process does not become distorted by 'expertise that is fausse and science that is junky.'" <u>Fed. Ins. Co. v. Pentair Residential Filtration, LLC</u>, No. 12–10853–RGS, 2013 WL 6145531, at *3 (D. Mass. Nov. 21, 2013) (quoting <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 159 (1999) (Scalia, J., concurring)). As a threshold question, the judge must first determine whether the witness is sufficiently qualified by "knowledge, skill, experience, training, or education" to give his proffered opinion. <u>Fed. Ins. Co.</u>, 2013 WL 6145531, at *3 (internal quotations omitted) (quoting Fed. R. Evid. 702)). If the witness is deemed qualified, the judge must next determine whether the specific testimony offered in the case "both rests on a reliable foundation and is relevant to the task at hand." <u>In re Nexium (Esomeprazole) Antitrust Litig.</u>, 842 F.3d 34, 52 (1st Cir. 2016) (internal quotations omitted) (quoting <u>Daubert</u>, 509 U.S. at 597). "The reliable foundation requirement necessitates an inquiry into the methodology and the basis for an expert's opinion." <u>Samaan v. St. Joseph Hosp.</u>, 670 F.3d 21, 31 (1st Cir. 2012). The relevancy requirement "seeks to ensure that there is an adequate fit between the expert's methods and his conclusions" by determining whether the expert's conclusions "flow rationally from the methodology employed." <u>Id.</u> at 32.

#### a) The Breadth of Holt's opinions

Here, Holt proffers several opinions here in support of Fogarty's negligence based upon his training and experience and examination of the Staircase on May 23, 2019 and referenced "discovery documents" and "engineering references," D. 33 at 35-37. In relevant part, he opines

that "[a]t the time of the accident the metal tread nosing on the second floor landing [on the Staircase] was not in compliance with applicable codes and standards in that it was in a deteriorated and defective condition and presented a substantial hazard and risk of severe injury to pedestrians during normal and foreseeable use;" that the "concrete deterioration" due to corrosion (rust) caused the metal nosing to separate from the surface below and this "height differential presented a tripping hazard which caused Ms. Fogarty to trip and fall forward down [the Staircase];" "that the only tripping hazard that could have caused Ms. Fogarty's right boot heel to catch was the tread nosing at the top landing that was observed to be raised and loose by Ms. Fogarty and Dr. Koski within one week of Ms. Fogarty's fall and which was subsequently repaired by an employee of Whole Foods;" "[m]etal corrosion and concrete deterioration progress across time and would be observable to reasonable inspection over time well prior to the date of Ms. Fogarty's fall;" and the "corrosion on the riser resulted in the gradual deterioration of the bond between the concrete and the tread nosing resulting in a progressive loosening of the tread nosing." D. 33 at 36-37. Ultimately, Holt's opinion is that the "cause of Ms. Fogarty's trip and fall down [the Staircase] and the resulting injuries was the dangerous and defective maintenance condition of the top landing nose plate which was a result of long-term metal corrosion and concrete deterioration." Id. at 38.

b)    The Court Assumes Holt is Qualified to Give Opinions in the Engineering Field

As an initial matter, the Court assumes, without deciding, that Holt is qualified to give opinions in the engineering field. Whole Foods first argues that Holt is not qualified to render the opinions he offers. D. 39 at 4-5. The argument is based principally on the fact that Fogarty's counsel neglected to attach materials attesting to Holt's qualifications as appendices in the affidavit counsel originally filed with this Court on July 18, 2019. See D. 33 at Ex. 5. Fogarty's counsel

contends, however, that Whole Foods received the appendices on June 27, 2019, more than a month prior to Defendant's motion to strike the Holt Affidavit. D. 44 at 7.

Based on those appendices, D. 46 at 10, Holt obtained an engineering degree from Purdue University in 1963. Id. at 10. He is registered as a professional engineer by the Commonwealth of Massachusetts. Id. For the last forty-five years, Holt has consulted on "[m]echanical design, machine design stress analysis, failure analysis, structural design, safety evaluations of structures, machinery, equipment and process designs, analysis of machinery, equipment, and vehicle failures, accident reconstruction and fire and explosion causal investigations." Id. He has previously been found qualified to testify on engineering matters on several other occasions. See Silva v. Milacron, Inc., No. 01-cv-40003-NMG, 2004 WL 5711258, at *6 (D. Mass. Mar. 5, 2004); see also Osorio v. One World Tech., Inc., No. 06–cv–10725-NMG, 2010 WL 956659, at *1 (D. Mass. Feb. 4, 2010); Flynn v. Johnson Control World Servs., Inc., No. 02-11380-JLT, 2004 WL 5711263, at *1 (D. Mass. Oct. 27, 2004); D. 46 at 12.

c) The Opinions that Holt Proffers, However, Have No Reliable Basis for Any Relevant Opinion Here

Even assuming *arguendo* that Holt has the credentials to opine as to engineering matters, the Court concludes that he has not provided a reliable basis for any relevant opinion here. In judging the reliability of expert testimony, "Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. . . . It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998). This is where Holt's proffered opinions fall short.

Fogarty relies upon Holt's key conclusion that a "dangerous and defective maintenance condition of the top landing nose plate which was a result of long-term metal corrosion and concrete deterioration" caused Fogarty to fall down the Staircase. D. 33 at 38; D. 46 at 8. This conclusion allegedly is based upon his "education, skill, training and engineering experience" as well as his inspection of the Staircase on May 23, 2019, his review of depositions and reference materials on the causes of concrete deterioration. D. 33 at 35; D. 46 at 5. Holt states that "[m]etal corrosion and concrete deterioration progress across time," D. 33 at 37; D. 46 at 7, but notably provides no scientific rationale for why the state of corrosion and deterioration in 2019 proves that a similar state existed in 2017. D. 33 at 37; D. 46 at 7. He does not document any measurements he took to ascertain how long the corrosion existed nor does he provide any kind of estimate about the age of corrosion beyond stating it would have been observable before Fogarty's fall. Although he concludes that such corrosion and concrete deterioration would have been "observable to reasonable inspection over time well prior to Ms. Fogarty's fall," D. 33 at 37; D. 46 at 7, none of the witnesses, not Lopez or Araujo or Fogarty or Koski, made such observations at the time of the incident or any time after the incident. To the extent that Holt made his observation of any such conditions, it does not provide a reasonable basis for his opinion where his examination occurred over two years after the incident.

Even if there were some reliable basis for such a conclusion that corrosion and concrete deterioration existed on the date of the incident, there is also no reasonable basis for Holt's opinion concluding that this alleged condition on the top stair caused Fogarty's fall. Fogarty testified that she did not remember her descent down the Staircase and she was uncertain about which stair she might have the heel of her right boot, but felt it catch up near the top of the Staircase. Even assuming that Fogarty's testimony that she felt her heel catch near the top of the Staircase is

admissible, cf. Donahue v. Maggiano's Holding Corp., No. 18-cv-10230-DPW, 2020 WL 730832, at *3 (D. Mass. Feb. 13, 2020) (concluding that plaintiff's testimony was "not based on sensory perception" and, therefore, was inadmissible under Fed. R. Evid. 701(a)), there is insufficient explanation for how Holt reaches his opinion that a particular stair, the top stair, caused her fall as a matter of reasonable certainty. Even accepting his characterization of the entirety of Araujo's testimony that Araujo "was looking for liquid or food on the floor" and "did not look at any of the nosings on the stairs or at the top of the stairs," D. 33 at 35; D. 46 at 5; compare D. 33 at 25 with D. 26 at 85, or his characterization of the entirety of Lopez's testimony that Lopez "went down the stairs to see if something was broken … but he didn't see anything, " D. 33 at 36; D. 46 at 6; D. 47 at 79, neither statement, even as Holt characterizes them, supports his conclusion about which step on the Staircase was the culprit, or what, if any, corrosion or concrete deterioration, existed on that step at the time of the February 28, 2017 incident.

Because Holt does not document any methodology he used to reach his conclusion, Fogarty seems to be suggesting that the Court can rely solely upon his training and experience. See D. 44 at 15-16. Such basis is insufficient, especially since Holt has failed to explain how his "experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 426 (D. Mass. 2008) (internal quotation and citation omitted) (stating expert opinion based only on experience will be excluded unless the expert provides adequate explanation to conclusions reached). Other district courts have excluded similar expert opinion that based conclusions on the timeframe of corrosive conditions solely on the expert's experience. See Alvarez v. San Antonio Citation Serv. Ctr., No. SA–07–CA–0523–FB, 2008 WL 11334094, at *3-4 (W.D. Tex. Sept. 11, 2008) (excluding expert opinion that corrosion existing in 2006 must have

existed 2003 when expert did not identify any methodology employed); H.C. Smith Invs., LLC v. Outboard Marine Corp., 181 F. Supp. 2d 746, 752-53 (W.D. Mich. 2002) (excluding expert opinion on corrosion because corrosion "is the kind of scientific phenomena which, under Daubert, requires a scientific opinion based on the fundamentals of the scientific method and scientific scholarship" and "[t]here was no corrosion testing done" in this case). The opinion appears to be "connected to existing data only by the *ipse dixit* of the expert," and should be excluded by Federal Rule of Evidence 702. See Gen. Elec. Co., 522 U.S. at 146; see also Donahue, 2020 WL 730832, at *4 (concluding that proposed expert's "conclusions about the probability that the door was malfunctioning at the time of the incident are based solely on an unsupported *res ipsa loquitor* assertion that, if the door were working properly, it would not have expelled [plaintiff] in the way that she testifies it did. . . . [b]ut [*r*]*es ipsa loquitor* is no substitute for the lack of evidence of the defendant's negligence") (internal citation omitted).

Holt's opinion that "at the time of the accident the metal tread nosing on the second floor landing [on the Staircase] was not in compliance with applicable codes and standards," D. 33 at 37, similarly has insufficient foundation. He does not provide which codes and/or standards apply, beyond asserting that "[t]hese codes and standards require means of egress to be maintained in a safe condition," id., how they apply to the Staircase and the nosing and, similar to the analysis of his other opinions, what factual basis would support the same given the absence of observation of corrosion or cement deterioration at or about the time of the incident.

For all of these reasons, and given the Court's role as gatekeeper to ensure that any proffered expert opinion is not only relevant, but reliable, Donahoe, 2020 WL 730832, at *4 and cases cited, the Court allows Whole Foods' motion to strike Holt's proffered opinion, D. 38.

### 2.	*Motion to Strike Evidence of Remedial Measures*

Whole Foods moves, pursuant to Federal Rule of Evidence 407, to strike evidence of repairs that one of Defendant's employees performed on the topmost stair of the Staircase during the week of April 10, 2017 – April 16, 2017, approximately six weeks after the incident. D. 40. Rule 407 holds that evidence of subsequent repairs cannot be admitted to prove "negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407. The rule's objective is to encourage, or at least not discourage, safety improvements and other corrective measures. Raymond v. Raymond Corp., 938 F.2d 1518, 1523 (1st Cir. 1991). Evidence of subsequent repairs can be admitted, however, for other purposes "such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. Admissibility for "other purposes" under Rule 407 does not necessarily end the inquiry as the Court may still exercise its discretion under Rule 403 to exclude the evidence if the probative of such evidence is substantially outweighed by the danger of, among other things, unfair prejudice, misleading the jury or cumulative evidence. Fed. R. Evid. 403; see Raymond, 938 F.2d at 1524-25.

Here, Fogarty argues evidence of the subsequent repair falls under the "other purposes" exception of Rule 407. D. 32, 45. First, she argues the subsequent repair is admissible to impeach the testimony of Araujo and Lopez. D. 32 at 17-18; D. 45 at 3-4. To prevent the impeachment exception from becoming a "subterfuge to prove negligence or culpability" and otherwise swallowing the rule, there must be a "nexus between the statement sought to be impeached and the remedial measure." Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 31-32 (1st Cir. 1992). For example, evidence of subsequent repairs may be admitted to impeach testimony that denies the existence of any repairs. See Tavares v. Mich. Fishing, Inc., 937 F. Supp. 84, 86 (D. Mass.

1996) (finding evidence of subsequent remedial repairs admissible when defendant had explicitly testified that no repairs had been done).  If, on the other hand, the subsequent repair touches only tangentially on the credibility of the testimony sought to be impeached, the court may exercise its discretion to exclude such evidence.  See Reddin v. Robinson Prop. Grp. Ltd. P'ship., 239 F.3d 756, 759-60 (5th Cir. 2001) (concluding that the exclusion of evidence of defendant taping off area where accident occurred only "touched tangentially on the credibility of testimony" that the employees had inspected the entire area and found no defect and was therefore not an abuse of discretion).

There is little nexus here between the testimony of Araujo's and Lopez's observations of the condition of the Staircase on the day of the incident and a repair performed six weeks later. Particularly given the timing, it is difficult to see how the fact of the repair could be used to impeach the thoroughness of the search of the Staircase made by Araujo and Lopez six weeks earlier.  Because the repair is of little probative value to the truthfulness of  Araujo and  Lopez's testimony and may cause the factfinder unfairly to infer that the repair addressed a negligent condition at the time of the incident, the evidence should not be admitted under Rule 407's impeachment exception or under Rule 403.

Second, Fogarty argues the evidence of subsequent repair is admissible because it rebuts Whole Foods' contention that the Staircase was not defective at the time of the incident. D. 32 at 18-19; D. 40 at 4-5.  But this is at the crux of the defense that the defendant was not negligent, the purpose of the exclusion of subsequent repairs under Rule 407.  See Harrison, 981 F.2d at 31.  To the extent that Fogarty seeks to admit this evidence to rebut Araujo and Lopez's statements about the condition of the stairs at the time of the incident, as explained above, that argument is unavailing because the evidence of a repair six weeks later is too attenuated from Araujo and

Lopez's statements. Moreover, this is not a case in which Whole Foods is contending that the defect was so obvious that no warnings were required or that Fogarty was contributorily negligent. See Pitasi v. Stratton Corp., 968 F.2d 1558, 1560-61 (2d Cir. 1992) (admitting evidence of subsequent remedial measure taken immediately after incident to rebut defense that ski trail posed obvious risk and plaintiff was contributorily negligent); Rimkus v. Nw. Colo. Ski Corp., 706 F.2d 1060, 1065-66 (10th Cir. 1983) (admitting evidence of subsequent remedial measure taken one day after incident as rebutting evidence as to contributory negligence of plaintiff, not negligence of defendant).

Third, Fogarty argues the evidence of the subsequent repair should be admitted because Rule 407 permits such evidence to prove the feasibility of precautionary measures if the feasibility is disputed. D. 32 at 19-20; D. 45 at 5-6. Whole Foods, however, does not dispute the feasibility of precautionary measures if the stair was indeed defective at the time (as Whole Foods denies). See Fed. R. Evid. 407 (stating that a court may admit evidence proving feasibility of precautionary measures "if disputed"); Esposito v. SDB Invs., Inc., 873 F. Supp. 2d 418, 421 (D.N.H. 2012) (allowing defense's motion to exclude evidence of subsequent remedial measures where defense was not disputing the feasibility of such measures); see Kenny v. Se. Pa. Transp. Auth., 581 F.2d 351, 356 (3d Cir. 1978) (noting that "when the defendant opens up the [feasibility] issue by claiming that all reasonable care was being exercised at the time, then the plaintiff may attack that contention by showing later repairs which are inconsistent with it"). Because Whole Foods is not disputing the feasibility of precautionary measures, or otherwise opening the door to impeachment about feasibility of such measures, the evidence of subsequent repairs will not be admitted under Rule 407's feasibility exception.

Accordingly, the Court allows Whole Foods' motion to strike, D. 40, and since such evidence would be inadmissible, the Court did not consider the evidence of subsequent remedial measures in deciding the motion for summary judgment.

## B.     Motion for Summary Judgment

Having concluded that Holt's opinion is properly excluded on Daubert grounds and that Fogarty also may not rely upon the subsequent remedial measures in contravention of Rule 407, the Court must still decide if Whole Foods is entitled to the summary judgment it seeks in its favor. The Court concludes that it is entitled to such judgment.

To prevail on her negligence claim under Massachusetts law against Whole Foods, Fogarty must prove that "the defendant owed [her] a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Donahue, 2020 WL 730832, at *2 (quoting Stewart v. Five Bridge Inn, LLC, No. 14-P-1878, 2015 WL 8519517, at *1 (Mass. App. Ct. Dec. 10, 2015)). Specifically, "a plaintiff seeking to recover against a shopkeeper for a fall on the premises must prove both that a dangerous condition existed and that the shopkeeper had notice, actual or constructive, of the dangerous condition but took no corrective action." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012). In assessing the notice requirement, the Supreme Judicial Court has adopted the "mode of operation approach" whereby "it is necessary in determining whether the evidence was sufficient to warrant an inference that the defendant violated its duty of care to consider 'whether the jury reasonably could have concluded that, in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred." Sheehan v. Roche Bros. Supermarkets, 448 Mass. 780, 790-91 (2007) (citing Barry v. Beverly Enters.–Mass. Inc., 418 Mass. 590, 593 (1994)).

"[I]f a plaintiff proves that an unsafe condition on an owner's premises exists that was reasonably foreseeable, resulting from an owner's self-service business or mode of operation, and the plaintiff slips as a result of the unsafe condition, the plaintiff will satisfy the notice requirement." Id. at 791.

Whole Foods argues that Fogarty has not made a showing, as a matter of undisputed fact, that a defect on the Staircase existed at the time of the February 28, 2017 and that such defect caused her injury. D. 25 at 15-19. This Court agrees. Putting aside Hart's proffered opinion and subsequent remedial measures for the reasons discussed above, the undisputed record is that no defect was observed at or about the time of incident. Any observations by Fogarty and Koski about the tread on the topmost stair being loose and raised within a week of incident do not create a material issue of fact as to the existence of a defect on the day on the incident and, even if they did, still do not provide the causal link between such defect and Fogarty's injury, an essential element of her negligence claim. See Gomez, 670 F.3d at 397-98. In Gomez, the plaintiff felt something strange on the floor of the supermarket, found that he could not lift his foot and then fell, all facts consistent, in his argument, with a sticky substance being present on the floor at the time of his fall. Id. The facts of Gomez mirror those of Fogarty's fall, even considering the evidence in the light most favorable to her, that she felt her heel catch on something and then fell, but did not observe, nor did anyone else observe, any dangerous condition at the time of her fall. See id. at 398. The assumptions and after the fact observations about the condition of the Staircase that Fogarty proffers are "a possible explanation" but not "a probable one" such that proof has been established. Id. Moreover, even assuming *arguendo* that Fogarty could have shown a material issue of fact remaining as to the existence of the defect, she has failed to show that Whole Foods had reasonable notice of such defect. Id. at 397. There is no evidence from which to

conclude that there was a defect at the time of the incident and, in the absence of same, what steps Whole Foods could have and should have taken to prevent the accident that occurred. See Sheehan, 448 Mass. at 790-91. There is no dispute that Fogarty was injured in a fall at the Whole Foods on the evening of February 28, 2017 and that she has suffered as a result. As a matter of law, even on this developed record, however, she has not shown that there is a factual basis to conclude that any breach of duty of care by Whole Foods caused the injury she sustained. See Gomez, 670 F.3d at 398 (noting that "[p]eople fall for a wide variety of reasons, and assuming the cause of a fall, without any competent evidence, impermissibly elevates assumption over proof").

Accordingly, the Court allows Whole Foods' motion for summary judgment, D. 24.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the motion to strike Holt's proffered opinion, D. 38, ALLOWS the motion to strike evidence of subsequent remedial measures, D. 40, and ALLOWS Whole Foods' motion for summary judgment, D. 24.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge